**JENNY L. FOLEY, Ph.D., ESQ.**
Nevada Bar No. 9017
E-mail: jfoley@hkm.com
**DANA SNIEGOCKI, ESQ.**
Nevada Bar No. 11715
E-mail: dsniegocki@hkm.com
**REX MARTINEZ, ESQ.**
Nevada Bar No. 15277
E-mail: rmartinez@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
1785 East Sahara, Suite 300
Las Vegas, Nevada 89104
Tel: (702) 805-8340
Fax: (702) 805-8340
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| TINA ITSCHNER, an individual, <br><br> PLAINTIFF, <br><br> vs. <br><br> HNTB CORP., a Corporation, DOES 1-50, inclusive and ROE CORPORATIONS 1-50, inclusive, <br><br> DEFENDANT. | **CASE NO.:** <br><br> **COMPLAINT AND JURY DEMAND** |

The Plaintiff Tina Itschner ("Itschner") by and through her attorneys of record, the law firm of HKM Employment Attorneys LLP hereby complains and alleges as follows:

## JURISDICTION

1. This is an action for damages arising under the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. §12101 et. seq. and under NRS Chapter 613.

2. This Court has primary jurisdiction over the claims set forth herein pursuant to 28 U.S.C. § 1331 (federal question). Additionally, this Court has supplemental

jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. §1367.

3. Upon information and belief, all material allegations relative to the named Defendant contained in this Complaint occurred in the State of Nevada, in the county of Clark. Therefore, venue properly lies in the southern division of the United States Court for the District of Nevada pursuant to 28 U.S.C. §1391(b)(2).

4. At all relevant times, Defendant was engaged in interstate commerce and employed 20 or more employees for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year, and is therefore subject to the provisions of the statutes outlined herein.

## EXHAUSTION OF ADMINISTRATIVE REMEDY

5. On or about July 7, 2020, Plaintiff filed a Charge of Discrimination against her employer, the Defendant(s) named in this action with the Equal Employment Opportunity Commission ("EEOC").

6. On or about August 25, 2020, Plaintiff received the "Notice of Right to Sue" from the EEOC.

7. Less than 90 days have passed since the date of mailing of the "Notice of Right to Sue." This action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

8. Prior to filing this action, Plaintiff exhausted the administrative remedy on all claims pled hereunder.

## PARTIES

9. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

10. Plaintiff is a citizen of the State of Nevada and a resident of Clark County, Nevada.

11. At all relevant times, Defendant HNTB Corp. was a Delaware corporation, authorized

to conduct business in the State of Nevada and the specific acts complained of herein all occurred in Clark County, Nevada.

12. Doe Defendants 1 through 50 inclusive and Roe Corporation Defendants 1 through 50 inclusive, are unknown at the present time and thus sued by Plaintiff in such fictitious names. Plaintiff alleges however that said Defendants are in some manner responsible for the damages sustained by Plaintiff and that said Defendants will be named with peculiarity once their identities are known.  At such time, Plaintiff will seek leave of court to state more fully herein the names and acts of said Defendants.

## **GENERAL ALLEGATIONS**

13. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

14. Plaintiff began working for the Defendant, HNTB Corporation (hereinafter "HNTB" or "the Company"), on or about February 1, 2002 in Kansas City, Missouri.

15. Plaintiff was hired into the position of Manager of Procurement and Strategic Sourcing.

16. During a meeting in mid to late-2004, Plaintiff told her immediate superior, the Vice President of Treasury, Craig Denson (hereinafter "Denson"), that she suffered from Rheumatoid Arthritis and Ulcerative Colitis.

17. During that meeting, Plaintiff told Denson that her Ulcerative Colitis required frequent bathroom trips throughout the day.

18. During that meeting Plaintiff also told Denson that her physician had suggested that a move to a warmer climate would be beneficial for her Rheumatoid Arthritis.

19. During that meeting, Plaintiff requested a reasonable accommodation under the Americans with Disabilities Act that she be allowed to work remotely to accommodate her disabilities.

20. Specifically, Plaintiff told Denson that a move to a warmer climate would improve the

pain and stiffness she experienced as a result of her Rheumatoid Arthritis.

21. Plaintiff also told Denson that working from home would allow her to be able to take the frequent bathroom breaks that are required by her Ulcerative Colitis condition.

22. During that meeting, Denson said he supported Plaintiff and granted Plaintiff's request for a reasonable accommodation and allowed Plaintiff to become a remote employee.

23. In June 2005, Plaintiff relocated to Florida which has a generally warmer climate than Kansas City, Missouri.

24. Upon information and belief, at least 250 other employees employed by Defendant had also held remote positions during the time Plaintiff was an employee of Defendant.

25. Plaintiff continued to work remotely for more than one decade and did so successfully.

26. In or around January 2009, Plaintiff was promoted to the position of Enterprise Procurement Director.

27. Plaintiff's role as both Manager of Procurement and Strategic Sourcing as well as her later rule of Enterprise Procurement Director are roles that can successfully be performed remotely.

28. During that time period, Plaintiff would report to corporate headquarters approximately two times per month, but otherwise she remained a remote employee.

29. During that time period, Plaintiff also relocated to Las Vegas, Nevada in approximately March 2016, which has a generally warmer climate than Kansas City, Missouri.

30. In approximately February 2018, Denson was promoted to Chief Financial Officer and Bryan Lambkin (hereinafter "Lambkin") was given the position of Vice President of Treasury.

31. Plaintiff first met in-person with Lambkin after he was elevated to Vice President of

Treasury in approximately early-2018.

32. During that meeting, Plaintiff informed Lambkin of her medical conditions and about the Company's reasonable accommodation that was granted to allow her to work remotely.

33. Throughout the year 2019, Lambkin made various comments to Plaintiff regarding her disabilities including, but not limited to, "you are sick a lot," and "wow, you have a lot of medical issues."

34. In November 2019, Denson informed Plaintiff that Lambkin had decided that Plaintiff's position could no longer be remote, that Lambkin wanted the position to be full-time in the Kansas City, Missouri office, and that Plaintiff was "in a no win situation."

35. Denson did not inform Plaintiff as to the basis for Lambkin's decision and did not specify that allowing Plaintiff to continue working remotely would impose an undue hardship on the Company.

36. On January 14, 2020, Lambkin emailed Plaintiff and stated that he was flying to Las Vegas, Nevada to meet with her.

37. This was the first time Lambkin had ever asked to meet with Plaintiff in person in Las Vegas, Nevada, despite Lambkin having taken several trips to Las Vegas, Nevada.

38. On or about January 15, 2020, Plaintiff emailed Lambkin informing him that she had an appointment with her oncologist on January 17, 2020 to discuss a possible upcoming surgery and that she would be unavailable that day.

39. Lambkin ignored Plaintiff's email.

40. On January 16, 2020, Plaintiff met with Lambkin in a Las Vegas, Nevada hotel where Lambkin informed her that she was being terminated for cause.

41. Lambkin told Plaintiff that there had been allegations that she mistreated employees and that such allegations had been vetted.

42. Lambkin refused to provide Plaintiff with any specifics regarding the alleged allegations.

43. Plaintiff has never mistreated any employees at HTNB.

44. After Plaintiff's termination, the position she held, Enterprise Procurement Director, was given a new title, Director of Corporate Real Estate, and has since been filled by a person who works in-office in the Kansas City, Missouri office.

**FIRST CAUSE OF ACTION**
**(Violation of the ADA, 42 U.S.C. §12101 et. seq.)**
**(Defendant HNTB Corp.)**

45. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

46. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

47. Because Rheumatoid Arthritis and Ulcerative Colitis, and the symptoms associated with the same, limit at least one of Plaintiff's major life activities, Plaintiff is an individual with a disability under the ADA.

48. Plaintiff was fully qualified to be an Enterprise Procurement Director and could perform the essential functions of the position and had done so for a period of nearly fifteen (15) years.

49. Defendant is a covered employer to which the ADA applies.

50. Defendant discriminated against Plaintiff's employment because of her known and recognized disabilities (Rheumatoid Arthritis and Ulcerative Colitis).

51. Defendant rescinded Plaintiff's reasonable accommodation after nearly fifteen (15) years of successfully performing her work remotely in a discriminatory fashion.
52. Defendant rescinded Plaintiff's reasonable accommodation after nearly fifteen (15) years of successfully performing her work remotely without any reasonable basis that would constitute an undue hardship to Defendant.
53. Defendant rescinded Plaintiff's reasonable accommodation after nearly fifteen (15) years of successfully performing her work remotely after Defendant learned that Plaintiff may potentially be undergoing surgery because of her disability.
54. Defendant rescinded Plaintiff's reasonable accommodation because Lambkin no longer wanted Plaintiff's position to be performed remotely without providing any reasonable basis for such decision.
55. As a result of Defendant's actions, Plaintiff has become unemployed and has not been able to secure any subsequent employment and has suffered and will continue to suffer both economic and non-economic harm.
56. As a result of Defendant's actions, Plaintiff has suffered compensatory damages, including emotional and mental anguish, pain, and suffering.
57. Due to its illegal actions, Defendant must pay damages in an amount to be determined at trial for back pay, front pay, lost benefits, and compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.
58. Defendant's actions in terminating Plaintiff because of her disability and her request for reasonable accommodation was done in an oppressive and malicious manner.
59. Because Defendant is guilty of oppression, fraud, or malice, express or implied, Defendant must pay Plaintiff an additional amount for the sake of example and by way of punishment.
60. Plaintiff has had to obtain the services of an attorney to protect her rights and secure compensation for the damages incurred when Defendant violated Plaintiff's rights, and therefore, she is entitled to recover reasonable attorney's fees against Defendant.

///

## SECOND CAUSE OF ACTION
### (Violation of NRS Chapter 613)
### (Defendant HNTB Corp.)

61. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

62. Defendant violated NRS Chapter 13 et. seq., by discriminating against Plaintiff because of Plaintiff's disability in violation of NRS 613.

63. Specifically, Defendant engaged in discrimination in violation of NRS Chapter 613.330(1)(a) when Defendant, *inter alia*:

    a. Terminated Plaintiff's employment after Lambkin voiced that he no longer wanted Plaintiff's position to be performed remotely in accordance with her reasonable accommodations.

    b. Terminated Plaintiff's employment after learning that Plaintiff may potentially be having surgery because of her disability.

    c. Failed to provide any basis or reason that Plaintiff's reasonable accommodations presented an undue hardship to the Company.

    d. Replaced Plaintiff with an employee who performs the Plaintiff's role in-office in Kansas City, Missouri.

64. Plaintiff may be unaware of additional detrimental acts constituting retaliation in that it harmed her in the workplace.

65. As a result of Defendant's actions, Plaintiff has suffered compensatory damages, including emotional anguish, pain, and suffering.

66. Due to its illegal actions, Defendant must pay damages in an amount to be determined at trial for back pay, front pay, lost benefits, and compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

67. Defendant's actions in terminating Plaintiff because of her disability and her request for reasonable accommodation was done in an oppressive and malicious manner.

68. Because Defendant is guilty of oppression, fraud, or malice, express or implied,

Defendant must pay Plaintiff an additional amount for the sake of example and by way of punishment.

69. Plaintiff has had to obtain the services of an attorney to protect her rights and secure compensation for the damages incurred when Defendant violated Plaintiff's civil rights, and therefore, she is entitled to recover reasonable attorney's fees against Defendant.

**WHEREFORE,** Plaintiff prays this court for:

    a. A jury trial on all appropriate claims;

and to enter judgment in favor of the Plaintiff by:

    b. Awarding Plaintiff an amount sufficient to fully compensate her (including tax consequences) for all economic losses of any kind, and otherwise make her whole in accordance with the law;

    c. Back pay with interest;

    d. An award of compensatory and punitive damages to be determined at trial;

    e. An award of attorney's fees and costs; and

    f. Any other relief the court deems just and proper.

Dated: November 20, 2020.

Respectfully submitted,
**HKM EMPLOYMENT ATTORNEYS, LLP**

By: /s/ *Jenny L. Foley*
**JENNY L. FOLEY, Ph.D., ESQ.**
Nevada Bar No. 9017
E-mail: jfoley@hkm.com
**DANA SNIEGOCKI, ESQ.**
Nevada Bar No. 11715
E-mail: dsniegocki@hkm.com
**REX MARTINEZ, ESQ.**
Nevada Bar No. 15277
E-mail: rmartinez@hkm.com
1785 East Sahara, Suite 300
Las Vegas, Nevada 89104
Tel: (702) 805-8340
Fax: (702) 805-8340
*Attorneys for Plaintiff*